o

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ERIC K.,                              )   Case No. 8:20-cv-01507-SP
                                      )
                Plaintiff,            )
                                      )
        v.                            )   MEMORANDUM OPINION AND
                                      )   ORDER
                                      )
KILOLO KIJAKAZI, Acting               )
Commissioner of Social Security       )
Administration,                       )
                                      )
                Defendant.            )
                                      )
_____)

**I.**

**INTRODUCTION**

On August 13, 2020, plaintiff Eric K. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the mental residual functional capacity ("RFC") determination was supported by substantial

evidence; (2) whether the Administrative Law Judge's ("ALJ") step five finding was supported by substantial evidence; and (3) whether the appointment of former Commissioner of Social Security, Andrew Saul, was constitutional.  Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 7-14; Notice of New Authority ("Notice") at 1-2; *see* Defendant's Memorandum in Support of Answer and Opposition to P. Mem. ("D. Mem.") at 3-20.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, substantial evidence supports the ALJ's mental RFC assessment, but the ALJ's step five finding is not supported by substantial evidence.  The court also rejects plaintiff's constitutional argument as incomplete and contrary to law.  Based on the error at step five, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 40 years old on the alleged disability onset date, attended two years of college.  AR at 64, 165.  Plaintiff has past relevant work as a systems engineer, information technology support technician, and clerical worker.  *Id*. at 57-58.

On March 29, 2017, plaintiff filed an application for a period of disability and DIB due to chronic fatigue syndrome, neuropathy, increasing difficulty with cognitive function, brain fog, short term memory loss, post-traumatic stress disorder ("PTSD"), anxiety, obsessive compulsive disorder ("OCD"), and irritable bowel syndrome.  *Id*. at 64-65.  The application was denied initially, after which plaintiff filed a request for a hearing.  *Id*. at 84-89.

On April 25, 2019, plaintiff, represented by counsel, appeared and testified

at a hearing before the ALJ.  *Id*. at 33-63.  The ALJ also heard testimony from Vanessa Amber Kay, plaintiff's wife, and Luis Mas, a vocational expert ("VE").  *Id*. at 56-61.  On June 5, 2019, the ALJ denied plaintiff's claim for benefits.  *Id*. at 11-23.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since November 2, 2015, the alleged onset date.  *Id*. at 13.

At step two, the ALJ found plaintiff suffered from the severe impairments of chronic fatigue syndrome, depressive disorder, generalized anxiety disorder, PTSD, attention deficit disorder, and OCD.  *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.* at 14.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the physical RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the limitations that plaintiff: could lift and carry 20 pounds occasionally and ten pounds frequently; could stand and walk for two hours in of an eight-hour workday with regular breaks; could sit for six hours in an eight-hour workday with regular breaks; could occasionally climb, balance, stoop, kneel, crouch, and crawl;  could not be exposed to hazards such as dangerous moving machinery or unprotected heights; and needed to be able to use a cane for prolonged ambulation of over 20 feet.  *Id*. at 16.  Regarding plaintiff's mental RFC, the ALJ determined plaintiff:

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1    could perform simple, routine, repetitive tasks; should not work in an environment

2    that is stringently production or quota-based, and thus could not perform fast-paced

3    assembly line type of work, but could meet production requirements that allowed

4    him to sustain a flexible and goal oriented pace; could perform low stress work,

5    defined as only involving occasional decision making and changes in the work

6    setting; and could have occasional contact with the public and co-workers. *Id*.

7         The ALJ found, at step four, that plaintiff was unable to perform his past

8    relevant work as a systems engineer, information technology support, or clerical

9    worker. *Id*. at 21.

10        At step five, the ALJ found there were jobs that existed in significant

11   numbers in the national economy that plaintiff could perform, including swatch

12   clerk, mail sorter, and bench assembler. *Id*. at 22.  Consequently, the ALJ

13   concluded plaintiff did not suffer from a disability as defined by the Social

14   Security Act. *Id*. at 22-23.

15        Plaintiff filed a timely request for review of the ALJ's decision, which the

16   Appeals Council denied. *Id.* at 1-4.  The ALJ's decision stands as the final

17   decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

20        This court is empowered to review decisions by the Commissioner to deny

21   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

22   Administration must be upheld if they are free of legal error and supported by

23   substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

24   (as amended).  But if the court determines the ALJ's findings are based on legal

25   error or are not supported by substantial evidence in the record, the court may

26   reject the findings and set aside the decision to deny benefits. *Aukland v.*

27   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

28

4

1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.   The Mental RFC Determination Was Supported by Substantial Evidence

Plaintiff contends the ALJ improperly rejected Dr. Phaedra Caruso-Radin's opinion that he should be limited to two-step commands due to his impairments in concentration, persistence, and pace. P. Mem. at 7-10. Specifically, plaintiff argues the ALJ failed to provide logical and rational reasons for rejecting Dr. Caruso-Radin's opinion. *Id.*

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. 20

C.F.R. § 404.1545(a)(1)-(2); *see* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").[2]

Among the evidence an ALJ relies on in an RFC assessment is medical evidence and opinions. 20 C.F.R. § 404.1545(a)(3). For claims filed before March 27, 2017, the opinion of a treating physician was given more weight then an examining physician's opinion, which was given more weight than a reviewing physician's opinion. *See Holohan*, 246 F.3d at 1202. Under this previous hierarchy of medical opinions framework, the Ninth Circuit required an ALJ to provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted opinion of a treating or examining physician, or specific and legitimate reasons supported by substantial evidence to reject a contradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Under the revised regulations, for cases filed on or after March 27, 2017, an ALJ will no longer defer or give specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a); *see Thompson v. Comm'r*, 2021 WL 1907488, at *3 (E.D. Cal. May 12, 2021); *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021). Instead, an ALJ will consider the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. 20 C.F.R.

---

[2]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1  § 404.1520c(b)-(c); *see Sylvester G. v. Saul*, 2021 WL 2435816, at *2 (C.D. Cal.

2  June 15, 2021).  The most important of these factors are supportability and

3  consistency.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required to,

4  explain how she or he considered the other three factors.  *Id*.  But when two or

5  more medical opinions "about the same issue are both equally well-supported . . .

6  and consistent with the record . . . but are not exactly the same," the ALJ is then

7  required to explain how "the other most persuasive factors in paragraphs (c)(3)

8  through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

9      **1.    Relevant Medical Opinions**

10      Dr. Paul Fernandez, a psychologist, examined plaintiff and reviewed his

11  medical records on November 28, 2017.  AR at 441-48.  During the mental status

12  examination, Dr. Fernandez observed plaintiff's cognitive functioning was "fairly

13  adequate" with some memory and concentration difficulties, but overall his

14  memory was not impaired.  *See id*. at 444.  Dr. Fernandez also observed plaintiff's

15  attention and concentration levels were mildly impaired, with plaintiff

16  demonstrating an adequate attention span while answering questions and following

17  test questions, while also being able to sustain concentration during performance

18  tests.  *Id*. at 445.  Based on the history, examination, and tests administered, Dr.

19  Fernandez opined plaintiff, among things, would have: no difficulty to understand,

20  remember, and carry out short and simplistic verbally based instructions; mild

21  difficulty to understand, remember, and carry out detailed instructions; no

22  difficulty in handling simplistic work-related decisions without special

23  supervision; moderate difficulty to maintain attendance and complete an eight-hour

24  workday; no difficulty to interact appropriately with supervisors, co-workers, and

25  peers so long as plaintiff was able to concentrate; and mild difficulties in

26  concentration, persistence, and pace.  *Id*. at 447.

27      State agency psychologist Dr. Caruso-Radin reviewed plaintiff's medical

28

1  records and Dr. Fernandez's opinion. *Id*. at 70-75. Dr. Caruso-Radin opined
2  plaintiff was moderately limited in his ability to, among other things: carry out
3  detailed instructions; maintain attention and concentration for extended periods;
4  sustain an ordinary routine without special supervision; and complete a normal
5  workday or workweek without interruptions from psychologically based symptoms
6  and to perform at a consistent pace. *Id*. at 77-78. With respect to plaintiff's
7  concentration and persistence capacities, Dr. Caruso-Radin opined plaintiff can
8  understand, remember, apply knowledge, and carry out a two-step command
9  involving simple instructions and maintain concentration, persistence, and pace for
10  such. *Id*. at 78. Dr. Caruso-Radin further opined that although plaintiff may have
11  difficulty sustaining attention over extended periods, he could sustain
12  concentration, persistence, or pace up to four-hour increments with customary
13  work breaks and could complete a normal workday and workweek. *Id*.

14        **2.  RFC Assessment**

15        In reaching his mental RFC determination, the ALJ reviewed and considered
16  the medical evidence and opinions. *Id*. at 16-21. The ALJ found both Dr.
17  Fernandez's and Dr. Caruso-Radin's opinions to be somewhat persuasive. *Id*. at
18  20. The ALJ noted that Dr. Fernandez's opinion that plaintiff had no more than
19  moderate impairments was somewhat persuasive because it was consistent with the
20  normal findings during his mental status examinations, Dr. Fernandez had actually
21  examined plaintiff, and he was a clinical psychologist. *Id*. The ALJ did not adopt
22  Dr. Fernandez's physical assessments because they were outside of his area of
23  expertise. *Id*. As for Dr. Caruso-Radin's opinion, the ALJ found it somewhat
24  persuasive because it was somewhat consistent with the objective medical
25  evidence, which showed fairly normal mental status examinations with an anxious
26  or angry mood, and Dr. Caruso-Radin understood the Social Security disability
27  program and evidentiary requirements. *Id*. But the ALJ did not adopt Dr. Caruso-
28

1    Radin's limitation to two-step commands because it was vague and inconsistent

2    with the medical evidence from Dr. Fernandez, who found that plaintiff only had

3    mild difficulty with understanding, remembering, and carrying out detailed

4    instructions. *Id*.

5         Plaintiff's argument that the RFC assessment is flawed due to the ALJ's

6    failure to provide logical and rational reasons for rejecting Dr. Caruso-Radin's

7    opined two-step limitation is not grounded in statute or case law.  Neither judicial

8    precedent nor the revised regulations require an ALJ to provide "logical and

9    rational reasons" for rejecting a physician's opinion.  Instead, as discussed above,

10   the new regulations require an ALJ to articulate his or her reasoning for his or her

11   persuasiveness finding, and specifically address the consistency and supportability

12   of the opinion.[3]  The ALJ's reasons must be supported by substantial evidence.

13

14        [3]    The Ninth Circuit has not yet addressed whether and how the revised

15   regulations alter the analysis of the adequacy of an ALJ's reasoning. *See J.M. v.*
     *Kijakazi*, 2022 WL 617120, at *13 (N.D. Cal. Mar. 2, 2022); *Robert D. v. Kijakazi*,

16   2021 WL 5905734, *3 (S.D. Cal. Dec. 14, 2021).  Some district courts in the Ninth
     Circuit have continued to require ALJs to provide clear and convincing or specific

17   and legitimate reasons for rejecting an opinion, while others have not. *Compare*
     *Stephanie B. v. Comm'r*, 2022 WL 72062, at *3 (W.D. Wash. Jan. 7, 2022) (courts

18   are still bound by Ninth Circuit precedent); *Kathleen G. v. Comm'r*, 2020 WL

19   6581012, at *3 (W.D. Wash. Nov. 10, 2020) (same); with *J.M.*, 2022 WL 617120,
     at *13 (concluding the holding in *Lambert v. Saul*, 980 F.3d 1266, 1268, 1274 (9th

20   Cir. 2020), requires the court to defer to new regulations, even when they conflict

21   with judicial precedent); *Teresa G. v. Kijakazi*, 2022 WL 298367, at *4 (S.D. Cal.
     Feb. 1, 2022) (the specific and legitimate reasons standard is no longer viable);

22   *Jones v. Saul*, 2021 WL 620475, at *8-*9 (E.D. Cal. Feb. 17, 2021) (the new

23   regulations effectively override or displace the contrary, pre-existing case law).
     Regardless, even if the Ninth Circuit precedent is no longer applicable, the new

24   regulations clearly require an ALJ to articulate their reasoning and address the

25   supportability and consistency factors. *See, e.g., Gonzales v. Kijakazi*, 2022 WL
     267438, at *9-*10 (E.D. Cal. Jan. 28, 2022).  Here, both plaintiff and defendant

26   contend the previous clear and convincing and specific and legitimate analysis is

27   no longer required. *See* Reply at 3; D. Mem. at 7-14.

28

1   Thus, the question is whether the ALJ properly evaluated the opined limitation

2   under the new regulations and her rejection of the two-step command limitation

3   was supported by substantial evidence,

4          Here, the ALJ properly evaluated all of the medical opinions, including Dr.

5   Caruso-Radin's, under the revised regulations and addressed supportability and

6   consistency.  The ALJ explained that she found Dr. Caruso-Radin's opinion

7   somewhat persuasive because it was somewhat consistent with the objective

8   medical evidence, since he had fairly normal mental status examinations with an

9   angry or anxious mood, and specifically rejected the two-step command limitation

10  on the grounds that it was vague and inconsistent with medical evidence and Dr.

11  Fernandez's opinion.  *See id.*  Plaintiff does not appear to contest the ALJ's

12  evaluation of the medical opinions and instead only challenges the reasons cited for

13  rejecting Dr. Caruso-Radin's two-step command limitation.

14         The ALJ's first reason for rejecting Dr. Caruso-Radin's two-step command

15  limitation – it was vague – does not appear to be proper.  The two-step command

16  limitation is not vague and the reason for rejection does not appear to correspond

17  to any of the five factors the ALJ may consider.  Nevertheless, any error here was

18  harmless because the ALJ found the limitation was inconsistent with Dr.

19  Fernandez's opinion.

20         The ALJ stated that the two-step command limitation was not consistent

21  with the medical evidence.  The ALJ noted that the mental status examinations

22  were fairly normal, plaintiff received sporadic treatment, and plaintiff was treated

23  conservatively.  *See id.* at 14-15, 18, 20.  With regard to Dr Fernandez's specific

24  findings, the ALJ noted Dr. Fernandez actually examined plaintiff and found,

25  among other things, plaintiff: was able to sustain concentration and attention

26  during the interview and tests; had concrete, organized, and appropriate thought;

27  recalled 3/3 objects immediately and 2/3 objects remotely; and performed serial 7s.

28

1   *See id*. at 18, 445.

2   The ALJ also cited the inconsistency of Dr. Caruso-Radin's two-step

3   command limitation to Dr. Fernandez's finding that plaintiff only had mild

4   difficulty understanding, remembering, and carrying out detailed instructions. *Id*.

5   at 20.  Plaintiff argues Dr. Caruso-Radin's limitation was not inconsistent with Dr.

6   Fernandez's opinion and findings because (1) Dr. Caruso-Radin and Dr. Fernandez

7   both agree that plaintiff had significant limitations in sustained concentration and

8   persistence; and (2) the basis of Dr. Caruso-Radin's limitation was concentration

9   and persistence, and, as such, Dr, Fernandez's opined mild impairment in

10  understanding, remembering, and carrying out detailed instructions was off point.

11  P. Mem. at 9-10; Reply at 4.   But plaintiff is incorrect.  In contrast to Dr. Caruso-

12  Radin, Dr. Fernandez opined plaintiff only had mild impairments in concentration

13  and persistence.  Moreover, it was up to the ALJ to reconcile the evidence and

14  opinions and make the RFC determination.  The ALJ can reasonably determine that

15  Dr. Fernandez's finding that plaintiff was only mildly impaired in his ability to

16  understand, remember, and carry out detailed instructions indicated plaintiff had

17  the capacity for more than two-step commands.  In short, the ALJ properly

18  addressed the persuasiveness of Dr. Caruso-Rabin's opinion under the rubric of the

19  new regulations.

20  Accordingly, the ALJ's mental RFC determination was supported by

21  substantial evidence.

22  **B.      The ALJ Failed to Reconcile an Apparent Conflict**

23  Plaintiff contends the ALJ erred at step five when he failed to reconcile

24  apparent conflicts between the VE testimony and the Dictionary of Occupational

25  Titles ("DOT").  P. Mem. at 10-14.  Specifically, plaintiff argues that the job of

26  mail sorter is classified at a higher reasoning level than his RFC, the job of small

27  bench assembler (alternatively referred to as small products assembler) requires

28

11

1    assembly line work and frequent teamwork in apparent conflict with his RFC, and

2    the VE testimony that the job of swatch clerk involved cubicle work was in

3    apparent conflict with the DOT. *Id.* at 11-14.

4         ALJs routinely rely on the DOT "in evaluating whether the claimant is able

5    to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273,

6    1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT

7    is a source of reliable job information). The DOT is the rebuttable presumptive

8    authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1421, 1435 (9th Cir.

9    1995). An ALJ may not rely on a VE's testimony regarding the requirements of a

10   particular job without first inquiring whether the testimony conflicts with the DOT,

11   and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p).

12

13        In order for an ALJ to accept a VE's testimony that contradicts the DOT, the

14   record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153

15   (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation

16   may be either specific findings of fact regarding the claimant's residual

17   functionality, or inferences drawn from the context of the expert's testimony.

18   *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

19   Where the ALJ fails to obtain an explanation for and resolve an apparent conflict –

20   even where the VE did not identify the conflict – the ALJ errs. *See Zavalin v.

21   Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("Where there is an apparent conflict

22   between the vocational expert's testimony and the DOT . . . the ALJ is required to

23   reconcile the conflict."); *see, e.g., Hernandez v. Astrue*, 2011 WL 223595, at *2-*5

24   (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict

25   between her testimony and DOT, ALJ erred in relying on VE's testimony and

26   failing to acknowledge or reconcile the apparent conflict); *Mkhitaryan v. Astrue*,

27   2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly

28

1   adopted the VE's conclusion that there was no apparent conflict [and] the ALJ

2   provided no explanation for the deviation," the ALJ "therefore committed legal

3   error warranting remand.").

4          At the hearing, in response to a hypothetical person with plaintiff's RFC, the

5   VE testified that such person could perform the jobs of mail sorter, bench

6   assembler, and swatch clerk.  AR at 58-59.  The VE eroded the job numbers by

7   50% to account for plaintiff's standing and walking limitations.  *Id*. at 59-60.  The

8   VE further testified that the bench assembler job was performed at a bench, the

9   mail sorter job was a sorting bin scenario, and the swatch clerk works in a cubicle.

10   *Id*. at 60.  The VE then testified that his testimony was consistent with the DOT

11   except for on the issue of off task time, for which he relied on the publications of

12   the American Board of Vocational Experts and his own expertise.  *Id*.

13          The VE here stated his testimony was consistent with the DOT, and the ALJ

14   relied on the VE's testimony.  AR at 22, 60.  But there were apparent conflicts and

15   the failure to explain the deviations was not harmless.

16           Each DOT job description includes general educational development

17   ("GED") scales for reasoning, language, and mathematics, which are "aspects of

18   education (formal and informal) which are required of the worker for satisfactory

19   job performance."  DOT, Appendix C, Section III.  To determine a job's simplicity

20   and the reasoning level required, one should look to the GED reasoning level

21   ratings for the job listed in the DOT.  *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983

22   (C.D. Cal. 2005).  A job's reasoning level "gauges the minimal ability a worker

23   needs to complete the job's tasks themselves."  *Id.*

24          A review of the reasoning level associated with the job of mail clerk

25   supports the conclusion that there is an apparent conflict in this case.  Plaintiff's

26   RFC limited her to simple, routine, repetitive tasks.  AR at 16.  The DOT classifies

27   the job of mail clerk as having reasoning level three.  DOT 209.687-026.  Level

28

1    three reasoning assumes a person can "[a]pply commonsense understanding to

2    carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal

3    with problems involving several concrete variables in or from standardized

4    situations." DOT, App. C. The Ninth Circuit held that "there is an apparent

5    conflict between the residual functional capacity to perform simple, repetitive

6    tasks, and the demands of Level 3 Reasoning." *Zavalin*, 778 F.3d at 847. Because

7    the ALJ simply accepted the VE's testimony there was no conflict, there was error

8    on its face since reasoning level three is inconsistent with an individual limited to

9    simple, routine, repetitive tasks.

10        Likewise, there was an apparent conflict between the VE's testimony that

11   plaintiff could perform the job of bench assembler or small parts assembler and the

12   DOT. The ALJ precluded plaintiff from "fast-paced assembly line type of work,"

13   but determined plaintiff could "meet production requirements that allowed [him] to

14   sustain a flexible and goal oriented pace." AR at 16. The DOT describes the job

15   as requiring a worker to perform "repetitive tasks on assembly line to mass

16   produce small products." DOT 706.684-022. In a case with similar facts, the

17   Ninth Circuit, in an unpublished opinion, held that when a claimant was precluded

18   from "highly fast-paced work, such as rapid assembly line work," there was an

19   apparent conflict between the VE testimony's that the claimant could perform the

20   job of small parts assembler and the DOT. *Randazzo v. Berryhill*, 725 Fed. Appx.

21   446, 447 (9th Cir. 2017). Plaintiff's limitation to occasional contact with

22   coworkers also appears to conflict with the DOT description requiring frequent

23   work as a member of an assembly group. *See* AR at 16; DOT 706.684-022. The

24   ALJ therefore erred when he failed to inquire about the apparent conflict.

25        Finally, there was no apparent conflict between the VE's testimony that

26   plaintiff could perform the job of swatch clerk and the DOT. Although the DOT

27   lists collecting cloth samples from cutting rooms as one duty of the job, the

28

1    remainder of the duties listed may be performed in a cubicle as the VE testified.

2    *See* DOT 222.587-050.  And plaintiff's contention that the job of swatch clerk was

3    in apparent conflict with his simple, routine, repetitive work limitation because it

4    had significant functions involving data appears to be based on plaintiff's own

5    analysis, not the DOT definition.  *See id*.

6          Although the VE identified at least one job plaintiff could perform, the

7    ALJ's errors were not harmless.  A claimant is not disabled if there are jobs that

8    exist in significant numbers in the national economy that he or she can perform.

9    *See* 42 U.S.C. § 1382c(a)(3)(B).  The remaining 13,000 swatch clerk jobs

10   identified by the VE do not appear to constitute a significant number of jobs in the

11   national economy.  AR at 59; *see Randazzo*, 725 Fed. Appx. at 448 (10,000

12   electrical assemblers jobs may not amount to a significant number of jobs in the

13   national economy); *see also Lemauga v. Berryhill*, 686 Fed. Appx. 420, 422 (9th

14   Cir. 2017) (noting that the Ninth Circuit has never found a number similar to

15   12,600 national jobs to be significant); *Gutierrez v. Comm'r*, 740 F.3d 519, 528-29

16   (9th Cir. 2014) (25,000 national jobs is a close call but sufficient); *but see Johnson*

17   *v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 national jobs, which were

18   merely representative of a larger category of jobs claimant could perform, was

19   significant).

20         Accordingly, the ALJ's step five finding was not supported by substantial

21   evidence.

22   **C.     The Court Rejects Plaintiff's Vague Constitutional Challenge**

23         On October 14, 2021, at the same time plaintiff filed his Reply, plaintiff

24   filed a Notice of New Authority.  In the Notice, he states the U.S. Department of

25   Justice's Office of Legal Counsel issued an opinion on July 8, 2021 that casts

26   significant doubt on the constitutionality of the appointment of the prior

27   Commissioner of Social Security.  Notice at 1.  Plaintiff notes that he filed his

28

1  claim for benefits on March 29, 2017, participated in a hearing on April 25, 2019,

2  received the ALJ's adverse decision issued May 31, 2019,[4] and was denied review

3  by the Appeals Council on June 11, 2020. *Id.* at 2. She indicates that Andrew Saul

4  held the office of Commissioner of Social Security as the sole person dischargeable

5  only for cause between June 17, 2019 and July 11, 2021. *Id.* at 1-2.

6        The court is puzzled by plaintiff's filing, which does not explain whether he

7  is seeking any particular type of relief as a result of the alleged constitutional

8  problem with the former Commissioner's appointment.  Plaintiff had never raised

9  the issue prior to the filing of her Notice.  To try to ascertain the nature of

10  plaintiff's argument, the court reviewed other social security cases raising the

11  issue.  It appears plaintiff intended to argue that the Commissioner's final decision

12  in this case arose from an unconstitutional administrative process. *See, e.g.*,

13  *Dareth T. v. Kijakazi*, 2022 WL 671540, at *2 (C.D. Cal. Mar. 7, 2022).

14  Specifically, the allegedly unconstitutional removal provision rendered Saul's

15  tenure as Commissioner unconstitutional, which in turn tainted his delegation of

16  authority to the assigned ALJ and the Appeals Council to consider and decide

17  plaintiff's case. *See id.*

18        The court is not convinced plaintiff's constitutional challenge warrants

19  reversal here, for two reasons.  First, the Ninth Circuit recently opined that "the

20  possible invalidity of a restriction on the removal of an official does not render

21  invalid the appointment of the official." *See Toni D. M. v. Kijakazi*, 2022 WL

22  423494, at *2 (C.D. Cal. Jan. 5, 2022) (citing *Decker Coal Co. v. Pehringer*, 8

23  F.4th 1123, 1137 (9th Cir. 2021)).  Second, plaintiff has not even attempted to

24  show any connection between the allegedly unconstitutional removal clause and

25  the ALJ's or Appeals Council's decision denying him benefits. *See id.* at *3 (citing

26  other cases on point); *Dareth T.*, 2022 WL 671540, at *3 (same).  Accordingly, the

27

28      [4]   The date of the ALJ's decision is actually June 5, 2019. *See* AR at 23.

16

1   court rejects plaintiff's incomplete constitutional challenge.

2                                  **V.**

3                       **REMAND IS APPROPRIATE**

4          The decision whether to remand for further proceedings or reverse and

5   award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

6   888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

7   discretion to direct an immediate award of benefits where: "(1) the record has been

8   fully developed and further administrative proceedings would serve no useful

9   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

10  evidence, whether claimant testimony or medical opinions; and (3) if the

11  improperly discredited evidence were credited as true, the ALJ would be required

12  to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020

13  (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

14  instructions to calculate and award benefits).  But where there are outstanding

15  issues that must be resolved before a determination can be made, or it is not clear

16  from the record that the ALJ would be required to find a plaintiff disabled if all the

17  evidence were properly evaluated, remand for further proceedings is appropriate.

18  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

19  211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

20  further proceedings when, even though all conditions of the credit-as-true rule are

21  satisfied, an evaluation of the record as a whole creates serious doubt that a

22  claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

23         Here, remand is required to allow the ALJ to follow up with the vocational

24  expert.  On remand, the ALJ shall inquire about the apparent conflicts between the

25  VE's testimony and the DOT.  The ALJ shall then determine what work, if any,

26  plaintiff is capable of performing.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered
REVERSING the decision of the Commissioner denying benefits, and
REMANDING the matter to the Commissioner for further administrative action
consistent with this decision.

DATED: March 31, 2022

_____
SHERI PYM
United States Magistrate Judge